IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| SARAH J. PLANT and PARKER PLANT, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| AVON PRODUCTS, INC., *et al.*, | ) ) |
| Defendants. | ) ) ) |

C.A. No. 3:23-691-JFA

**NOTICE OF REMOVAL**

PLEASE TAKE NOTICE that Defendants, Whittaker, Clark & Daniels, Inc., and Mary Kay Inc. (collectively, "Defendants"), by and through their undersigned counsel, hereby remove the above-captioned civil action from the Court of Common Pleas for Richland County, South Carolina, to the United States District Court for the District of South Carolina, Columbia Division, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, as described below. While reserving the right to respond more fully if Plaintiffs seek a remand, Defendants offer the following statement of the grounds for removal, as required by 28 U.S.C. § 1446(a):

**I.     THE REMOVED CASE**

1.     Plaintiffs Sarah J. Plant and Parker Plant ("Plaintiffs") commenced this action on March 10, 2022, by filing a Summons and Complaint in the Court of Common Pleas for Richland County, South Carolina, captioned *Sarah J. Plant and Parker Plant v. Avon Products, Inc., et al.*, Case No. 2022-CP-40-01265 (the "State Court Action"). Plaintiffs thereafter filed their First Amended Summons and Complaint on April 11, 2022.

2.     Plaintiffs allege that Plaintiff Sarah Plant ("Mrs. Plant") was exposed to asbestos, from her birth in 1986 until approximately 2021, through her personal use, and her family's use, of "asbestos-containing makeup and body talc products." (Pls.' Am. Compl., ¶ 6, included in Exhibit A attached hereto). Plaintiffs also allege that Mrs. Plant was exposed to asbestos through her use of asbestos-containing art clay in the 1990s to 2000s when taking art classes. (*Id*.) Plaintiffs assert that the dust and fibers from the alleged asbestos-containing products permeated Mrs. Plant's person and clothing and were inhaled and ingested by Mrs. Plant, resulting in her diagnosis with mesothelioma on or about March 24, 2021. (*See id*. at ¶¶ 7, 25, 78). Relying on these allegations, Plaintiffs assert causes of action for Negligence, Strict Liability, Negligence Per Se, Breach of Implied Warranties, Fraudulent Misrepresentation, Fraudulent Misrepresentation and Conspiracy/Concert of Action, and Loss of Consortium against all of the defendants named in the State Court Action. (*See* Pls.' First Am. Compl., *generally*).

## II.     DISMISSAL OF RESIDENT DEFENDANT

### A.     The Removal is Timely.

3.     A notice of removal must be filed within 30 days of a defendant's receipt of the initial pleading or, "if the case stated by the initial pleading is not removable," within 30 days after the defendant's receipt, "through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *See* 28 U.S.C. § 1446(b)(1) & (3).

4.     Where removal is based on diversity of citizenship, on the basis of jurisdiction conferred by Section 1332, "[a] case may not be removed under [Section 1446(b)(3)]…more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." *See* 28 U.S.C. § 1446(c).

5.     In the instant case, removal is timely because Defendants' counsel first ascertained that the case at hand has become removable to federal court during the pre-trial motion hearing held in the State Court Action on February 15, 2023, during which Defendant Rite Aid of South Carolina, Inc. ("Rite Aid") was dismissed. (*See* Pre-Trial Hearing Transcript from Feb. 15, 2023, at Tr. 49:1–55:22, attached hereto as <u>Exhibit B</u>). Rite Aid was the only remaining defendant in the State Court Action that is either incorporated in South Carolina or has its principal place of business in South Carolina. (*See id.* at Tr. 111:19–113:2, 283:25–284:21; Ex. A, Pls.' First Amended Complaint, ¶ 66; Answer of Rite Aid of South Carolina, Inc. to Plaintiffs' Amended Complaint, at ¶ 9 ("In response to Paragraph 66 of the Amended Complaint, Defendant [Rite Aid] admits only so much as can be construed to allege that Defendant is incorporated under the laws of the State of South Carolina, [and] has its principal place of business in Pennsylvania…")). Defendants obtained a copy of the pre-trial motion hearing transcript on February 17, 2023, two days after the hearing. Defendants are filing this Notice of Removal with the United States District of South Carolina on February 21, 2023, which is within 30 days after their receipt of a copy of the motion hearing transcript reflecting Plaintiffs' oral dismissal, abandonment, and discontinuance of Plaintiffs' claims against Rite Aid (*i.e.*, the "other paper" from which Defendants first "ascertained that the case is one which is or has become removable"). *See* 28 U.S.C. § 1446(b)(3); *Heniford v. Am. Motors Sales Corp.*, 471 F. Supp. 328, 335 (D.S.C. 1979), *dismissed*, 622 F.2d 584 (4th Cir. 1980) ("[T]he plain purpose of the statute's designation of some 'other paper' is to initiate the 30 day removal period 'only after the defendant is able to ascertain intelligently that the requirements of removability are present.'").

6.      Plaintiffs commenced the State Court Action on March 10, 2022. Thus, this removal is timely pursuant to Section 1446(c) because Defendants are filing this Notice of Removal less than one year after the commencement of the action. *See* 28 U.S.C. § 1446(c).

**B.      The Dismissal of Rite Aid Was Voluntary.**

7.      "Typically where removal is based on diversity of citizenship, diversity must exist at the time the action is instituted in state court and the time of removal. However, diversity is tested ***only at the time of removal*** if such removal is premised on the plaintiff's voluntarily dropping the nondiverse defendant, although diversity did not exist among the parties at the commencement of the state court action." *Heniford*, 471 F. Supp. at 334 (D.S.C. 1979) (emphasis added). "It is quite well-settled that if the plaintiff voluntarily ***dismisses, discontinues, or in any way abandons***, the action as to the resident joint defendant, the cause then becomes removable, and may, upon prompt action, be removed by the nonresident defendants who have been served." *Id*. at 334-35 (citing 28 U.S.C.A. § 1446); *Crockett v. R.J. Reynolds Tobacco Co*., 436 F.3d 529, 532 (5th Cir. 2006) (discussing "the judicially-created 'voluntary-involuntary' rule whereby 'an action nonremovable when commenced may become removable thereafter only by the voluntary act of the plaintiff'"); *see also Higgins v. E.I. DuPont de Nemours & Co*., 863 F.2d 1162, 1166 (4th Cir. 1988). "The paramount consideration in determining whether the dropping of the resident defendant as an adverse party renders a case removable is if such resulted from the Voluntary act of the plaintiff." *Heniford*, 471 F. Supp. at 335. "This requirement of voluntariness ensures that plaintiffs have finally terminated their action against the resident defendant and were not victim to an involuntary dismissal from which they would have an appeal." *Id*.

8.      "[C]ourts have permitted removal under s 1446(b) where the dismissal or discontinuance as to the resident defendant is manifested by the conduct of the plaintiff." *Id*. In

*Heniford*, the U.S. District Court for the District of South Carolina, Florence Division, was presented with the issue of whether "the remarks of plaintiffs' counsel acted to create the requisite diversity of citizenship among the parties." *Id*. at 333. The district court held that plaintiffs' counsel's statements during closing argument directing the jury not to return a verdict against the resident defendant constituted a voluntary dismissal of the resident defendant, rendering the case removable to federal court. *Id*. at 333, 335 ("Regardless of whether it be classified a dismissal, discontinuance, termination, or abandonment, plaintiffs extinguished their claim against the resident defendant in explicitly instructing the jury not to return a verdict against him."). The district court further explained that:

> Although the elements of this de facto dismissal of [the resident defendant] do not precisely follow the dictates of Rule 45(1) of the Circuit Court Rules of South Carolina, which prescribes the requirements for voluntary dismissal without an order of the court, because no written stipulation of the same was filed, plaintiffs announced they were no longer going forward against [the resident defendants], and defendants consented to this discontinuance. While the formal requirements of the rule were not met, the substantive aspects of Rule 45(1)(b) were satisfied by the conduct of the parties, resulting in the dismissal of one defendant, not the entire action as anticipated by Rule 45(1).

*Id*. at 333. Rule 45(1) of the Circuit Rules of South Carolina, cited by the *Heniford* court[1], is similar to the current Rule 41(a) of the South Carolina Rules of Civil Procedure, which governs voluntary dismissal of actions. *See* Rule 41(a), SCRE.[2]

9.    Turning now to the instant case, while arguing its motion for summary judgment at the pre-trial motion hearing on February 15, 2023, Rite Aid summarized the facts of the case as they relate to Rite Aid, emphasizing the lack of evidence that Mrs. Plant ever purchased a cosmetic-talc-containing product from a Rite Aid store. (*See* Ex. B, Pre-Trial Hearing Transcript, at Tr. 49:1–55:8). The facts recited by Rite Aid's counsel during the motion hearing were as follows:

> [THE COURT:] All right. Rite Aid Motion for Summary Judgment.

---

[1] The *Heniford* court noted that "South Carolina Circuit Court Rule 45(1) as to voluntary dismissal or nonsuit specifies" that:

> Notwithstanding the provisions of any other Rules to the contrary, no case listed in the File Book which thereafter is settled or disposed of in any manner, shall be dismissed, marked ended, or stricken from the File Book except as follows:
>
> 1.  An action may be dismissed by the plaintiff without order of Court (a) by filing and serving a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs, or (b) by filing a stipulation of dismissal signed by all parties who have appeared in the action. . . .

*Id*. at 333 n.2.

[2] Rule 41(a) provides that a voluntary dismissal of a defendant may be accomplished as follows:

> (1) *By Plaintiff; By Stipulation*. Subject to the provisions of Rule 23(c), of Rule 66(a), and of any statute, an action may be dismissed by the plaintiff without order of court (A) by filing and serving a notice of dismissal at any time before service by the adverse party of an answer or motion for summary judgment, whichever first occurs, or (B) by filing a stipulation of dismissal signed by all parties who have appeared in the action.…
>
> (2) *By Order of Court*. Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper.

Rule 41(a)(1) & (2), SCRE.

MR. WALLINGER: Justice Toal, good morning. I'm Scott Wallinger. Are we going to argue only Plant, or would you like me to argue Plant and Payne? [3]

THE COURT: You know, I want to get through this in some reasonable period of time, so I think we all ought to argue both of them.

MS. MCVEY: I would agree for the plaintiff – especially for Rite Aid.

THE COURT: Thank you. Scott, you may address both plaintiffs.

MR. WALLINGER: Thank you. I'll start with the Plant case, Your Honor. Your Honor, we provided a memorandum in support of our motion. We also electronically filed an affidavit of the president of my client's company, which I don't know if Your Honor has. It was a separate filing.

THE COURT: I got notified of it late yesterday or early this morning. I can't remember which. I've taken a peek at it.

MR. WALLINGER: If the Court needed me to hand it up, I have a copy. Your Honor, my client, Rite Aid of South Carolina, Inc., was formed here in South Carolina in 1977. They operated in that 20-year period from '77 to '97 approximately 105 stores in different parts of South Carolina. They then went for a period until around 2008 where they had no stores operating in the state, and then they began to operate one store from '08 until '18 in Northeast Columbia, which was out by the hospital off I-77, which, as I understand, has no nexus to the life patterns of either plaintiff. So what we're really talking about here is the connection of the plaintiffs to stores in the period from '77 to '97. Plaintiff Plant concedes that she has no knowledge of having ever shopped at a store operated by my client. Her husband testified that he was aware she shopped at a store after 2000 but didn't know what she bought there. And as we know from the corporate history, that store in the period after 2000 would not have been operated by my client but by some other corporation at that point. And so what this really focuses on is any other testimony or evidence that links Rite Aid to sale of a product. I'm defending a products case where I feel my client's entitled to know what product they sold, where they sold it, and what allegedly it had in it. The mother of Ms. Plant testified, initially in response to my direct

---

[3] *Kelly Payne Clark and Shannon Payne Lancaster, as Co-Executors of the Estate of Shelby Linville Payne v. 3M Company, et al*., C.A. No. 2020-CP-40-01281, pending in the Court of Common Pleas for Richland County, South Carolina.

examination -- or cross-examination, I should say, she was not aware of any purchases of a powder or cosmetic talc containing product from a Rite Aid brand of store.

THE COURT: Let me ask you this. Cut to the chase. The most likely purchase would be in '77 through '97, when you say that's really the period when Rite Aid was here would be in the Litchfield Beach area. All right. Did you all have the store in Litchfield or surrounds during that time?

MR. WALLINGER: Your Honor, the testimony of my client will be, and I haven't put that in the record for purposes of this hearing because of fits evidence, is that there was no store operated in Georgetown County or in Horry County. So the testimony --

THE COURT: Didn't that affidavit say something to that effect?

MR. WALLINGER: Well, what it said is that there was no store operated outside of South Carolina because the company was created to operate stores within the state.

THE COURT: Right.

MR. WALLINGER: But I can represent – they have a spreadsheet showing where the stores were operated.

THE COURT: But you have credible information, you say, that shows no stores in Georgetown or Horry.

MR. WALLINGER: That's correct. And so we have testimony of Ms. Plant's mother that she believed based upon, you know, some memory of going to multiple drug stores that she might have gone to a Rite Aid either around Litchfield or Pawleys. She didn't testify about what product was purchased other than to say it may have been a powder. But that doesn't get us anywhere relative to what kind of powder or what the contents of it is. And, of course, relative to the key allegation plaintiffs make that Vi-Jon was the supplier of the powder, we also know that that relationship began after 2000. So if Vi-Jon was distributing any kind of powder to Rite Aid, it wasn't a store that my client operated up until '97. So there is no overlap of Vi-Jon as a source for a talc-containing product. And of course there's no evidence in the record of what product allegedly got bought before '97 or if it was even before '97. ***So we don't think there's a scintilla there to meet the elements of any of the causes of action on those issues. And as to Plant, we would ask for summary judgment at this point.*** A lot of the plaintiff's rebuttal gets

into issues about mining and expert testimony. The only thing I
would mention relative to Dr. Haber, who is referenced, is there's no
-- Rite Aid is not mentioned in Dr. Haber's deposition. He talks
about products in a general sense, but he's giving an opinion that
links Ms. Plant's condition for an exposure for that matter to a
product that my client sold.

Moving on to Payne. Ms. Payne was a North Carolina resident her
entire life. Her family had a beach house, and, I'm sorry, mobile
home vacation property in what I'll call the lower part of the Myrtle
Beach area in the '70s. They then bought a different beach house that
replaced the first one in the Windy Hill area, which is closer to North
Myrtle Beach and to the North Carolina line. There's no testimony
about going to a specific store. What the two adult daughters of
personal -- the statutory beneficiaries have said, they said they
thought there was a Rite Aid pharmacy store closest to both the
mobile home location during the period of time that that was utilized
for vacationing. And that they had some recollection of going to
another Rite Aid store that was a few miles up the road, 17 going
northeast at other times. There's no time delineation. But as I've
indicated, it would have had to have been -- we're talking strictly
about the time period between '77 and '97. And, you know, it's based
upon the inventory of stores. We know there wasn't a store in Horry
County. And then again just to make the record of point, they're
claiming that Vi-Jon is the culprit of the supplier to whatever
product my client sold. And that relationship didn't begin until after
2000 so there couldn't have been a sale by my client. *We don't think
there's a scintilla sufficient to create a viable inference for the jury
that my client is liable in either case on any form or fashion, Your
Honor.*

THE COURT: Thank you, Mr. Wallinger.

(*Id*.). At that point, the court gave Plaintiffs' counsel an opportunity to respond to Rite Aid's

motion. Yet, when Plaintiffs' counsel addressed the court, she did not contest *any* of the factual

assertions or arguments made by Rite Aid's counsel and, in fact, did not offer *any argument*

*whatsoever* in opposition to Rite Aid's summary judgment motion. (*Id*. at Tr. 55:9-14). Rather,

Plaintiffs' counsel conceded that the evidence is insufficient for a jury to find Rite Aid liable,

stating: "Good morning, Your Honor. Theile McVey again for the Plant and Payne families. *I*

*have to admit that Mr. Wallinger's representation about the facts in this case are accurate.*" (*Id*.

at 55:9-14). Plaintiffs' counsel <u>said nothing else</u> about Rite Aid's motion. In admitting that Rite Aid's counsel's representation of the facts was accurate and in not disagreeing with *any* of his assertions, Plaintiffs conceded that there was no genuine issue as to any material fact. *See Baughman v. Am. Tel. & Tel. Co.*, 306 S.C. 101, 114–15, 410 S.E.2d 537, 545 (1991) (stating "summary judgment is proper when 'there is no genuine issue as to any material fact and...the moving party is entitled to judgment as a matter of law'"). Thus, Plaintiffs conceded summary judgment on the record—effectively abandoning their claims as to Rite Aid—which equates to a voluntary dismissal. Because Plaintiffs' counsel voluntarily chose not to contest Rite Aid's summary judgment motion at the hearing when given an opportunity to do so—and, in fact, ***admitted*** that Rite Aid's representation of the facts of the case were accurate (*i.e.*, that there was not a "scintilla sufficient to create a viable inference for the jury that [Rite Aid] is liable" in "any form or fashion")—Plaintiffs voluntarily dismissed, discontinued, and abandoned their claims against resident defendant Rite Aid, rendering the case removable to federal court. *See Heniford v*, 471 F. Supp. at 334-35 ("It is quite well-settled that if the plaintiff voluntarily dismisses, discontinues, or in any way abandons, the action as to the resident joint defendant, the cause then becomes removable, and may, upon prompt action, be removed by the nonresident defendants who have been served.").

10.    It was only after Plaintiffs admitted the accuracy of Rite Aid's factual representations, thereby conceding that there was no genuine issue of any material fact and abandoning their claims against Rite Aid, that the court announced the consequence of Plaintiffs' abandonment of its claims against Rite Aid. In doing so, the court did not comment on the facts or make findings like it had previously done when ruling on other defendants' summary judgment motions earlier in the hearing, but instead simply stated:

> All right. I will grant the Motion for Summary Judgment with regard to a Rite Aid in both the Payne case and the Plant case. The motion is granted. And just to be sure about housekeeping, I have recited the Plant 2022-CP-40-1265 into the record. And with respect to Payne, it is 22 2022-CP-40-01281. And summary judgment is granted to Rite Aid as a defendant in each of these cases, and it, therefore, is dismissed from each case.

(*See* Ex. B, Pre-Trial Hearing Transcript, at Tr. 55:15-25). Just as plaintiffs' counsel's statements and "de facto dismissal" of the resident defendant during closing arguments in *Heniford* satisfied the substantive requirements for a voluntary dismissal by a plaintiff under former Rule 45(1) (which is similar to the current Rule 41(a)(1)), the court's ruling during the hearing on Rite Aid's summary judgment motion likewise was a "de facto" voluntary dismissal because it satisfied the substantive requirements for a voluntary dismissal under Rule 41(a)(2). *See Heniford,* 471 F. Supp. at 333; Rule 41(a)(2). Under Rule 41(a), a plaintiff may voluntarily dismiss a defendant via a notice of dismissal—without a court order and without the consent of the other parties that have appeared in the action—"*at any time before service by the adverse party of an answer or motion for summary judgment*"; however, when the requirements of Rule 41(a)(1) are not met (*e.g.*, where the defendant has already served an answer or motion for summary judgment), a voluntary dismissal must be issued by the *court* pursuant to Rule 41(a)(2). *See* Rule 41(a) (emphasis added); *see also Grubb v. Donegal Mut. Ins. Co.*, 935 F.2d 57, 60 (4th Cir. 1991).

11.    The voluntariness of Plaintiffs' dismissal of Rite Aid is further evidenced by the fact that, in intentionally admitting the accuracy of Rite Aid's factual representations and declining to contest those assertions during the hearing on Rite Aid's motion for summary judgment, Plaintiffs waived their right to appeal the granting of summary judgment in Rite Aid's favor. *See State v. Benton*, 338 S.C. 151, 157, 526 S.E.2d 228, 231 (2000) ("an issue conceded in the trial court cannot be argued on appeal" (citing *TNS Mills, Inc. v. South Carolina Dep't of Revenue,* 331

S.C. 611, 503 S.E.2d 471 (1998))); *Heniford*, 471 F. Supp. at 335 ("The paramount consideration in determining whether the dropping of the resident defendant as an adverse party renders a case removable is if such resulted from the Voluntary act of the plaintiff. This requirement of voluntariness ensures that plaintiffs have finally terminated their action against the resident defendant and were not victim to an involuntary dismissal from which they would have an appeal.").

**C.    Rite Aid Was Fraudulently Joined.**

12.    In the alternative, if this Court should find that Plaintiffs' counsel's decision not to oppose Rite Aid's summary judgment motion at the pre-trial hearing does not equate to a voluntary dismissal, removal is nonetheless appropriate because Rite Aid was fraudulently joined.

13.    "The doctrine of fraudulent joinder permits a federal court to 'disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction.'" *Boss v. Nissan N. Am., Inc.*, 228 F. App'x. 331, 334-35 (4th Cir. 2007) (quoting *Mayes v. Rapoport*, 198 F.3d 457, 461 n.9 (4th Cir. 1999)). "The 'fraudulent joinder' doctrine permits removal when a non-diverse party is (or has been) a defendant in the case." *Mayes*, 198 F.3d at 462 ("noting that '[f]raudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity'" (quoting *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir.1998))). "Fraudulent joinder is a well established exception to the voluntary-involuntary rule." *Id.* at 461 n.9 (quoting *Insinga v. LaBella,* 845 F.2d 249, 254 (11th Cir.1988)). "'Fraudulent joinder' is a term of art, it does not reflect on the integrity of plaintiff or counsel, but is merely the rubric applied when a court finds either that no cause of action is stated against the nondiverse defendant, or *in fact* no cause of action exists. In other words, a joinder is fraudulent if "there [is] no real intention

to get a joint judgment, and...there [is] no colorable ground for so claiming." *AIDS Counseling &*

*Testing Centers v. Grp. W Television, Inc*., 903 F.2d 1000, 1003 (4th Cir. 1990) (quoting *Lewis v.*

*Time Inc*., 83 F.R.D. 455, 460 (E.D.Cal.1979)) (emphasis in original).

      14.     To establish fraudulent joinder, the removing party must show either: "(1) outright

fraud in the plaintiff's pleading of jurisdictional facts or (2) that there is no possibility that the

plaintiff would be able to establish a cause of action against the in-state defendant in state court.'"

*Benjamin v. Wal-Mart Stores, Inc.*, 413 F. Supp. 2d 652, 654 (D.S.C. 2006); *see also Flagg v.*

*Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016). "In order to determine whether an attempted

joinder is fraudulent, the court is not bound by the allegations of the pleadings, but may instead

"consider the entire record, and determine the basis of joinder by any means available." *AIDS*

*Counseling & Testing Centers*, 903 F.2d at 1004 (*Dodd v. Fawcett Publications, Inc*., 329 F.2d

82, 85 (10th Cir.1964)). "[T]o determine whether a plaintiff has improperly joined a non-diverse

defendant, the district court must examine the plaintiff's possibility of recovery against that

defendant *at the time of removal*." *Stryker Corp.*, 819 F.3d at 137.

      15.     In the instant case, Plaintiffs' counsel's statements at the motion hearing on

February 15, 2023—only a few days prior to the filing of the Notice of Removal—demonstrate

that there is no possibility that the Plaintiffs would be able to establish a cause of action against

Rite Aid. While arguing its summary judgment motion, Rite Aid's counsel thoroughly discussed

the lack of evidence to establish a link between Rite Aid and the causation of Mrs. Plant's disease,

and he concluded his argument by stating: "We don't think there's a scintilla sufficient to create a

viable inference for the jury that my client is liable in either case on any form or fashion, Your

Honor." (*See* Ex. B, Pre-Trial Hearing Transcript, at Tr. 55:4-7).  The fact that Plaintiffs' counsel's

sole response to Rite Aid's counsel's argument was, "***I have to admit that Mr. Wallinger's***

*representation about the facts in this case are accurate*," strongly demonstrates that Plaintiffs

could not support a cause of action against Rite Aid. (*See id*. at 55:9-14); *see also Benjamin*, 413

F. Supp. 2d at 654; *Stryker Corp.*, 819 F.3d at 136; *Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 296

(5th Cir. 2019), *as revised* (Aug. 23, 2019) ("Improper joinder 'can be established by

demonstrating,' among other things, the 'inability of the plaintiff to establish a cause of action

against the non-diverse party in state court.'" (quoting *Crockett*, 436 F.3d at 532)). Accordingly,

the record shows that Rite Aid was fraudulently joined and that removal to this Court was proper.[4]

## III.    JURISDICTION BASED ON DIVERSITY OF CITIZENSHIP

16.    Section 1441(a) provides that "[e]xcept as otherwise expressly provided by Act of

Congress, any civil action brought in a State court of which the district courts of the United States

have original jurisdiction, may be removed by the defendant or the defendants, to the district court

---

[4] Even without Plaintiffs' concession on the record, Plaintiffs cannot establish a cause of action against Rite Aid in state court. South Carolina courts apply a code pleading, rather than notice pleading, standard that requires the plaintiff to allege hard facts, rather than mere conclusions, supporting each element of the causes of action. *See Paradis v. Charleston Cnty. Sch. Dist*., 424 S.C. 603, 613, 819 S.E.2d 147, 152 (Ct. App. 2018), *rev'd, remanded, and overruled on other grounds*, 433 S.C. 562, 861 S.E.2d 774 (2021) (confirming that code pleading is required in South Carolina and that code pleading is not as "lenient" as federal notice pleading); *see also* James F. Flanagan, South Carolina Civil Procedure § 8.B.("[T]he pleader must describe each element of the cause of action in terms of the facts of the case."). "In deciding whether a claim should be dismissed pursuant to Rule 12(b)(6), SCRCP, this court should consider whether [the plaintiff] has 'state[d] facts sufficient to constitute a cause of action.' 'Rule 12(b)(6), SCRCP, "retains the Code Pleading standard…rather than the more lenient notice pleading standard found in the federal rules."'" *Paradis*, 424 S.C. at 613, 819 S.E.2d at 152-53 (quoting *Gaskins v. S. Farm Bureau Cas. Ins*., 343 S.C. 666, 671, 541 S.E.2d 269, 271 (Ct. App. 2000) and quoting Harry M. Lightsey, Jr. & James F. Flanagan, South Carolina Civil Procedure 93 (2nd ed. 1996)). "When a plaintiff states nothing more than legal conclusions, a claim should fail." *Id*. at 614, 819 S.E.2d at 153.

Plaintiffs do not comply with code pleading requirements. Instead, Plaintiffs merely make conclusory allegations. (*See* First Am. Compl., generally, and at ¶¶ 9, 66). Plaintiffs do not allege hard facts to support the conclusion that Plaintiffs purchased any asbestos-containing product from Rite Aid, much less the identity of the product, the identity of the Rite Aid location, or the time/date of purchase. (*See id*.)

of the United States for the district and division embracing the place where such action is pending."
28 U.S.C. § 1441(a).

17.     This Court has diversity jurisdiction over this civil action pursuant to 28 U.S.C. §
1332 because (a) there is complete diversity of citizenship between Plaintiffs and all remaining
named defendants, and (2) the amount in controversy exceeds the sum or value of $75,000,
exclusive of interests and costs. *See* 28 U.S.C. §§ 1332(a) and 1446.

18.     Venue in this Court is proper pursuant to 28 U.S.C. § 1441(a) because the State
Court Action is being removed to the United States District Court for the District of South
Carolina, Columbia Division, which is the district court of the United States for the district and
division embracing the state court where the State Court Action is pending.

A.     **There is Diversity of Citizenship Between the Remaining Parties.**

19.     A party removing based on diversity jurisdiction must demonstrate that complete
diversity exists. 28 U.S.C. § 1332(a)(1). For purposes of diversity jurisdiction, a corporation is a
citizen of the state in which it is incorporated and the state where it has its principal places of
business. 28 U.S.C. § 1332(c)(1). The citizenship of a limited liability company is determined by
the citizenship of all of its members. *Jennings v. HCR ManorCare, Inc*., 901 F. Supp. 2d 649, 651
(D.S.C. 2012).

20.     At the time of this Notice of Removal, diversity of citizenship exists between
Plaintiffs and the remaining defendants pursuant to 28 U.S.C. § 1332(a)(1).

21.     Plaintiffs are citizens and residents of the State of Tennessee. (*See* Ex. A, Pls.' First
Am. Compl., at ¶ 24).

22.     Plaintiffs' counsel, Theile B. McVey, represented to the state court during the pre-
trial motion hearing on February 15, 2023, that only six defendants still remain in the State Court

Action: (1) Whittaker, Clark & Daniels, Inc.; (2) Mary Kay Inc.; (3) Color Techniques, Inc.; and

the three IMI Fabi entities—(4) IMI Fabi, LLC; (5) IMI Fabi (USA), Inc.; and (6) IMI Fabi

(Diana), LLC. (*See* Ex. B, Pre-Trial Hearing Transcript, at Tr. 111:19–113:2). Specifically, while

arguing in support of Plaintiffs' Motion to Consolidate the trials of the *Plant* case and the *Payne*

case, Mrs. McVey made the following representations to the state court regarding the remaining

defendants whom Mrs. McVey expects to be at trial:

> MS. MCVEY: …We filed this Motion to Consolidate because it makes a lot of sense with both ***the defendants who are remaining, who I expect to be at trial*** and for the judicial resources of this Court. You know, Rule 42 allows for consolidation, and you have consolidated cases in the past. Both the Plant and Payne cases are talc cases. They both involve pleural mesothelioma. ***The defendants that remained in both cases are Mary Kay, Whittaker Clark & Daniels, and Color Tech. There is one defendant in Plant that is not in Payne and that is IMI-Fabi***. That's Mr. Roberts' client. And there are a couple --
>
> THE COURT: Spell that for me.
>
> MS. MCVEY: It's I-M-I F-A-B-I.
>
> MR. ROBERTS: ***If it helps, there are three entities under that umbrella. We can call it IMI-Fabi***, Your Honor, but there's three separate companies with that title and various endings.
>
> THE COURT: Got you.
>
> MS. MCVEY: And then in Payne, some nondefendants are not in Plant are ***Chanel***, who you just heard from; and ***Avon***; as well as ***Charles B. Chrystal***. But they're in default so they're just be dealing with the damages case. Your Honor, ***we are in active negotiations with the IMI-Fabi company and with Avon. So my expectation is the only nonsimilar defendant would be Chanel.***

(*Id*. at Tr. 111:19–113:2). At the end of the motion hearing, counsel for one of the remaining

defendants asked for a list of the defendants who would be going to trial in the *Plant* case

(scheduled to begin the following week, on February 21, 2023), and Mrs. McVey again made

representations about the defendants that were still in the case and that she expected to take to trial:

> MS. HERZ: …Can we just have some clarity on who is -- ***who the defendants are in Sarah Plant that's going to trial next week***?
>
> THE COURT: I'm sure that the plaintiffs will tell you as soon as they know. Are you able to tell us now, Ms. McVey, who is left?
>
> MS. MCVEY: Your Honor, it's a little bit of a moving target, so I'm not trying to be disingenuous. ***I know it's Mary Kay, Whittaker Clark and Daniels.*** There's a personal jurisdictional issue. ***And there's Color Techniques.***
>
> THE COURT: Yes. So the possible defendants are three -- Mary Kay, Color Tech, and Whittaker Clark & Daniels.
>
> MS. MCVEY: ***And IMI-Fabi is still in***.
>
> THE COURT: And IMI-Fabi is still in because, you know, we have something to rule on perhaps depending on what happens with this deposition. So there are four in Plant.

(*Id*. at Tr. 283:25–284:21).

23.    Upon information and belief, based on the above-mentioned representations by

Plaintiffs' counsel during the pre-trial hearing, Defendants' understanding is that the rest of the

defendants who were sued in the State Court Action (besides those identified by Mrs. McVey

during the hearing) have now been dismissed, even though dismissal orders have not yet been filed

as to every single one of the dismissed defendants.

24.    Defendant  Whittaker, Clark & Daniels, Inc. is incorporated in the State of New

Jersey and has its principal place of business in the State of Connecticut. (*See* Ex. A, Answer of

Whittaker, Clark & Daniels, Inc. to Pls.' First Am. Complaint, at ¶ 74). Thus, Defendant Whittaker,

Clark & Daniels, Inc. is a citizen of both New Jersey and Connecticut for removal purposes. *See*

28 U.S.C. § 1332(c)(1) (defining corporate citizenship).

25.    Defendant Mary Kay Inc. is incorporated in the State of Delaware and has its principal place of business in the State of Texas. (*See* Ex. A, Answer of Mary Kay Inc. to Pls.' First Am. Compl., at ¶ 59). Thus, Defendant Mary Kay Inc. is a citizen of both Delaware and Texas for removal purposes. *See* 28 U.S.C. § 1332(c)(1).

26.    Defendant Color Techniques, Inc. is incorporated in the State of New Jersey and has its principal place of business in New Jersey. (*See* Ex. A, Answer of Color Techniques, Inc. to Pls.' First Am. Compl., at ¶ 38). Thus, Defendant Color Techniques, Inc. is a citizen of New Jersey for removal purposes. *See* 28 U.S.C. § 1332(c)(1).

27.    Defendant IMI Fabi (USA), Inc., is a Delaware corporation with its principal place of business in Delaware. (*See* Ex. A, IMI Fabi (USA), Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction, and the Affidavit of Patrizia Zuppini in Support of Specially Appearing Defendant IMI Fabi (USA), Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction; *see also* Certificate of Incorporation of IMI Fabi (USA) Inc., included in Exhibit C attached hereto). Thus, Defendant IMI Fabi (USA), Inc. is a citizen of Delaware for removal purposes. *See* 28 U.S.C. § 1332(c)(1).

28.    Defendant IMI Fabi, LLC, is a single-member LLC, and its single member is IMI Fabi (USA), Inc. (*See* Ex. A, IMI Fabi, LLC's Motion to Dismiss for Lack of Personal Jurisdiction, and the Affidavit of James Woods in Support of Specially Appearing Defendant IMI Fabi, LLC's Motion to Dismiss for Lack of Personal Jurisdiction; *see* Ex. C, Limited Liability Company Amendment of Articles of Organization). Thus, Defendant IMI Fabi, LLC is a citizen of Delaware for removal purposes. *See* 28 U.S.C. § 1332(c)(1).

29.    Defendant IMI Fabi (Diana), LLC, is a single-member LLC, and its single member is IMI Fabi, LLC. (*See* Ex. A, IMI Fabi (Diana), LLC's Motion to Dismiss for Lack of Personal

Jurisdiction, and the Affidavit of Michael Brown in Support of Specially Appearing Defendant IMI Fabi (Diana), LLC's Motion to Dismiss for Lack of Personal Jurisdiction; *see* Ex. C, Limited Liability Company Amendment of Articles of Organization). As stated above, IMI Fabi, LLC, is a single-member LLC whose single member is IMI Fabi (USA), Inc. Because IMI Fabi (USA), Inc., is a citizen of Delaware, IMI Fabi (Diana), LLC, is also a citizen of Delaware for removal purposes. *See* 28 U.S.C. § 1332(c)(1).

30.     None of the six remaining defendants—which were expressly identified by Plaintiffs' counsel during the motion hearing—are citizens of South Carolina, where Plaintiffs brought the State Court Action. *See* 28 U.S.C. § 1441(b).

31.     Although Plaintiffs sued two defendants that were citizens of the State of Tennessee—Chattem, Inc. (a Tennessee corporation with its principal place of business in New Jersey) and Dollar General Corporation (a Tennessee corporation with its principal place of business in Tennessee)—by Plaintiffs' counsel's own admission at the pre-trial hearing, both of those Tennessee defendants have now been dismissed from the State Court Action. (*See* Ex. A, Answer of Chattem, Inc. to Pls.' Amended Complaint, at ¶ 13; and Answer of Dollar General Corporation to Pls.' First Amended Complaint, at ¶ 18; *see also* Ex. B, Pre-Trial Hearing Transcript, at Tr. 111:19–113:2, 283:25–284:21). Defendants also received notice that these Tennessee defendants are no longer in the case at the hearing on February 15, 2023. None of the six remaining defendants are citizens of the State of Tennessee—the state where Plaintiffs are citizens. Accordingly, there is complete diversity of citizenship between Plaintiffs and the six remaining defendants.

**B.     The Amount in Controversy Exceeds $75,000.**

32.     The jurisdictional minimum is satisfied where the defendant demonstrates, to a legal certainty or within a reasonable probability, that the amount in controversy exceeds $75,000. *See Phillips v. Whirlpool Corp*., 351 F. Supp. 2d 458, 461 (D.S.C. 2005) "[T]his court…leans toward requiring defendants in this position to show either to a 'legal certainty' or at least within 'reasonable probability' that the amount in controversy has been satisfied.").

33.     In light of the claims asserted by Plaintiffs, it is clear to a legal certainty, or at least within a reasonable probability, that the amount in controversy exceeds $75,000.

34.     Plaintiffs seek to recover unspecified actual and compensatory damages. When considering an award of actual or compensatory damages in light of the allegations concerning exposure to asbestos-containing products, it is clear that the amount in controversy exceeds $75,000 to a legal certainty or within a reasonable probability. (*See* First Am. Compl., at ¶ 98 and Prayer for Relief).

35.     In addition to actual and compensatory damages, Plaintiffs also seek to recover unspecified punitive damages. When considering an award of punitive damages in light of the allegations concerning exposure to asbestos-containing products, it is clear that the amount in controversy exceeds $75,000 to a legal certainty or within a reasonable probability. (*See* First Am. Compl., at ¶¶ 105, 121, and Prayer for Relief). A "claim for punitive damages alone makes it virtually impossible to say that the claim is for less than the jurisdictional amount." *Woodward v. Newcourt Com. Fin. Corp.,* 60 F. Supp. 2d 530, 532 (D.S.C. 1999).

36.     Based upon the foregoing, this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332 and 1441.

## IV.     PROCEDURAL REQUIREMENTS

37.     The undersigned counsel certifies that all remaining defendants in the State Court Action—Whittaker, Clark & Daniels, Inc., Mary Kay Inc., Color Techniques, Inc., IMI Fabi, LLC, IMI Fabi (USA), Inc., and IMI Fabi (Diana), LLC—consent to removal of the State Court Action to this Court. Thus, this Notice of Removal satisfies the unanimity requirement. *See* 28 U.S.C. § 1441(c)(2); *Heniford*, 471 F. Supp. at 338 (dismissing a plaintiff's objection that all party defendants did not join a notice of removal where the plaintiff "effectively dismissed" the non-joining defendant); *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, No. 2:11-CV-3081-RMG, 2012 WL 12893801, at *3 (D.S.C. May 18, 2012), *aff'd*, 736 F.3d 255 (4th Cir. 2013) (noting the "nominal or formal party exception to the rule of unanimity" can include "cases where there is no likely possibility that a plaintiff can establish a cause of action against a defendant" and situations "where the party was not involved in the activities charged in the complaint, have already settled with the plaintiff, have only been named as John Doe defendants, or where there is no basis for imputing liability" (quoting *Blue Mako, Inc. v. Mindis*, 472 F. Supp. 2d 690, 696 (M.D.N.C. 2007)).

38.     This Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure. *See* 28 U.S.C. § 1446(a).

39.     The pleadings in the State Court Action are extremely voluminous. Some of the pleadings are attached hereto as Exhibit A—including the Civil Action Coversheet, Summons and Complaint, First Amended Summons and Complaint, the Answers and/or Motions to Dismiss filed by the remaining defendants, and the Answers of dismissed defendants Rite Aid, Chattem, Inc., and Dollar General Corporation. However, to comply with Section 1446 in full, a supplemental filing will be submitted to the Court containing the remaining process and pleadings.

40.    In compliance with 28 U.S.C. § 1446(d) and Local Rule 83.IV.01, Defendants will promptly provide written notice of this Notice of Removal to all adverse parties and, promptly after the filing of this Notice of Removal, will file a copy thereof with the Clerk of Court for the Richland County Court of Common Pleas.

41.    The Answers to Local Rule 26.01 Interrogatories for Mary Kay Inc. and Color Techniques, Inc. are contained in Exhibit D.

V.    **RESERVATION**

42.    As noted above, while Defendants offer this statement to satisfy their obligation as removing defendants under Section 1446(a) to provide a short and plain statement of the legal and factual basis for removal, they reserve the right, and request an opportunity, to respond more fully in writing to any motion for remand in this case, and to supplement the record with affidavits, declarations, and/or other evidence supporting the assertions of fact stated herein.

43.    A properly removed case cannot be remanded for discretionary or policy reasons, such as allegedly related state court cases or a contention that judicial economy compels remand. *See* 28 U.S.C. § 1447(c); *Lisenby v. Lear*, 674 F.3d 259, 261 (4th Cir. 2012).

44.    Nothing in this Notice of Removal shall be interpreted as a waiver or relinquishment of the right of Defendants, or of any defendant consenting to removal, to assert any defense or affirmative matter, including, but not limited to, personal jurisdiction defenses. *See Gibbs Int'l, Inc. v. Wurttembergische Versicherung AG*, No. 7:10-CV-01447-JMC, 2011 WL 13318474, at *3 n.4 (D.S.C. Mar. 21, 2011) ("28 U.S.C. § 1332 confers upon this court only subject matter jurisdiction. Removal does not constitute a waiver or concession of personal jurisdiction."); *Nationwide Eng'g & Control Sys., Inc. v. Thomas*, 837 F.2d 345, 347-48 (8th Cir. 1988) ("Removal, in itself, does not constitute a waiver of any right to object to lack of personal

jurisdiction."); *Kostelac v. Allianz Glob. Corp. & Specialty AG*, 517 F. App'x 670, 675 n.6 (11th Cir. 2013) ("The removal of an action from state to federal court does not waive any Rule 12(b) defenses….").

WHEREFORE, Defendants Whittaker, Clark & Daniels, Inc., and Mary Kay Inc., respectfully request that this Court assume jurisdiction over this matter on removal from the Court of Common Pleas of the State of South Carolina for the County of Richland.

Respectfully submitted this 21st day of February 2023.

/s/Nicolas J. Cherry
Stephanie G. Flynn (Fed. Ct. ID 7461)
Nicolas J. Cherry (Fed. Ct. ID 12856)
Allyson R. Twilley (Fed. Ct. ID 12566)
FOX ROTHSCHILD LLP
2 W. Washington St., Ste. 1100
PO Box 87, Greenville, SC 29602
864-751-7607/FAX 864-751-7800
sgflynn@FoxRothschild.com
ncherry@FoxRothschild.com
atwilley@FoxRothschild.com

*Attorneys for Defendant*
*Whittaker, Clark & Daniels, Inc.*

- and -

William M. Wilson III (Fed ID No.7611)
Rachael L. Anna (Fed. ID NO. 12591)
200 East Broad Street, Suite 400
Greenville, South Carolina 29601
Telephone:  864-242-8200
Facsimile:  864-235-8900
bwilson@wyche.com
ranna@wyche.com

Alice W. Parham Casey (Fed. ID No: 9431 )
807 Gervais St., Suite 301
Columbia, South Carolina 29201
Telephone: (803) 254-6542
Facsimile:  (803) 254-6544
tcasey@wyche.com

*Attorneys for Defendant Mary Kay Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| SARAH J. PLANT and | ) | |
| PARKER PLANT, | ) | C.A. No. _____ |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | **CERTIFICATE OF SERVICE** |
| AVON PRODUCTS, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

I certify that on this date, a copy of the foregoing was electronically filed with the Clerk of Court, served on all known counsel of record electronically, and was placed in the U.S. Mail directed to the following:

Theile B. McVey, Esq.  
Kassel McVey Attorneys at Law  
1330 Laurel Street  
Columbia, South Carolina 29202  
tmcvey@kassellaw.com

Rachel A. Gross, Esq.  
Dean Omar Branham Shirley, LLP  
302 N. Market Street, Suite 300  
Dallas, Texas 75202  
rgross@dobslegal.com

This 21st day of February, 2023.

/s/Nicolas J. Cherry  
Stephanie G. Flynn (Fed. Ct. ID 7461)  
Nicolas J. Cherry (Fed. Ct. ID 12856)  
Allyson R. Twilley (Fed. Ct. ID 12566)  
FOX ROTHSCHILD LLP  
2 W. Washington St., Ste. 1100  
PO Box 87, Greenville, SC 29602  
864-751-7607/FAX 864-751-7800  
sgflynn@FoxRothschild.com  
ncherry@FoxRothschild.com  
atwilley@FoxRothschild.com

*Attorneys for Defendant*  
*Whittaker, Clark & Daniels, Inc.*